## HULL v. DETROIT UNITED RAILWAY.

1. NEGLIGENCE—STREET RAILWAYS—CARRIERS OF PASSENGERS—BOARDING CARS.

Starting a car while the passenger stands on the running board, assisting another passenger to board the car, constitutes actionable negligence for a resulting injury.

2. SAME—PROXIMATE CAUSE—DAMAGES—QUESTION OF FACT.

Evidence that the plaintiff was injured on the back of his hand sufficiently to start the blood; that a short time after the injury he got his hand in some thistles and that blood poisoning developed; that his physician considered the result to have followed from a blow upon the back of the hand, raises a question of fact for the jury, though the defendant's expert witness testified that the thistles might have caused blood poisoning.

3. TRIAL—INSTRUCTIONS TO JURY.

While an instruction by the court that one physician said, "in his judgment the injuries were due to an accident received in a street car" was not strictly accurate, it could not be said to constitute reversible error, where the testimony of the physician tended to establish such a conclusion.

4. EXPERT AND OPINION EVIDENCE—WEIGHT.

It is not error to instruct the jury that opinion evidence is not testimony as to facts, and is entitled to such weight as the jury may, in its sound judgment and discretion, think it should have, where the court further charged that the jury should accept the opinion which seemed to them the more reasonable under all the circumstances.

Error to Wayne; Mandell, J.   Submitted June 11, 1909.   (Docket No. 14.)   Decided December 10, 1909.

Case by Robert E. Hull against the Detroit United Railway for personal injuries.   A judgment for plaintiff is reviewed by defendant on writ of error.   Affirmed.

*Brennan, Donnelly & Van De Mark,* for appellant.

*Lehman, Riggs & Lehman,* for appellee.

MONTGOMERY, J.   The plaintiff, a man 76 years of age, brought this suit to recover damages which are claimed to have been the result of an injury received while boarding a street car belonging to the defendant company, some time in the month of July, 1904.   The plaintiff's claim is that, as he was boarding the car, having helped his wife and grandson on the running board, and stepped on the running board himself, the car started and threw him down.   He was not thrown to the pavement, but a Mr. Boring who was with him, and had not yet got on the car, caught him and kept him from being thrown off the running board.   Plaintiff's testimony tended to show that his right knee was skinned, a place about as large as a half dollar, and that his right shin and right hand were also skinned.   He testified that his right hand was skinned from the knuckles down to the wrist; that "it was roughened up and bled a little.   The skin was not broken to make the blood run, but the blood oozed out a little."

The evidence shows that a week or two after the street car accident the plaintiff was pulling a hill of potatoes in the garden, and started to use his right hand for that purpose and got Canadian thistles in his hand, and one of the most important questions in the case is whether the results hereinafter stated were due to the injury received at the hands of the defendant, or were due to the Canadian thistles.   The testimony shows that when his hand began to swell, he poulticed it, and gave it treatment for a con-

siderable time, but got no relief. It was a year or more later that he consulted Dr. Mulheron, and was treated by him from time to time, and finally, in the spring of 1906, was compelled to undergo an operation and submitted to the loss of his hand. The case was submitted to a jury, and a verdict found for the plaintiff of $1,500. The contention is made in this court that this verdict is so clearly against the weight of evidence as to call for a reversal, and it is further contended that there is but the barest scintilla of testimony to support the plaintiff's claims.

Upon the question of whether the plaintiff suffered an injury at the hands of the defendant, the testimony is very clear. The real question in doubt is as to whether the subsequent suffering which he endured, resulting in the loss of his arm, was due to that injury, or is traceable to the contact with the Canadian thistles a few days later. Upon this question the jury were aided by the testimony of two able and competent physicians. The testimony of Dr. Mulheron, who saw the hand, was that he discovered in the palm of the hand nothing to indicate any injury; that the swelling was on the back of the hand, and that the injury was such a one as would result from a blow such as the plaintiff claims to have received, and that the plaintiff developed a disease called periostitis, which means an inflammation of the periosteum. Dr. Spitzley, called for the defendant, testified that this periostitis might have been occasioned by getting Canadian thistles in the palm of the hand, and that the swelling on the back of the hand would not necessarily negative this theory. Dr. Spitzley also testified that an injury such as the plaintiff described might have resulted in an affection which would develop periostitis.

It is urged that the testimony left the jury to guess as to the cause of the injury. We think it is not open to this objection in a legal sense. It is true that the jury had to determine which was the more probable theory of the two, but, in view of the testimony of Dr. Mulheron that he, even in the absence of knowledge of the previous in-

jury to the back of the hand, had not ascribed the condition to the injury occasioned by contact with the thistles, we think there was room for balancing the probabilities, and that the jury were amply justified in finding the verdict which they did.    It is a case with a question peculiarly for the jury, and the verdict is not so clearly against the weight of the testimony as to justify us in reversing the conclusion.    The foregoing discussion answers the further contention that there was the barest scintilla of evidence to establish the plaintiff's case.

The circuit judge in the course of his instructions charged the jury as follows:

"If you reach that point, whether he is entitled to compensation for the loss of the arm and the pain and suffering that was incident to the injury that was in his arm, whether caused by this or something else, then, gentlemen of the jury, you should determine from the facts in the case whether that injury was due to the accident, or whether it was due to some other cause, and, in considering that, take into consideration all the testimony that was offered here.    With regard to that, some expert testimony has been offered on both sides.    One physician, the physician who treated Mr. Hull, who saw the hand, gives his opinion as to the cause of the conditions he saw.    Another physician gives his opinion with regard to the results that were found.    All that testimony, gentlemen of the jury, is opinion testimony, and with regard to opinion testimony I will say this:    That you may take into consideration, and give the opinion testimony that is offered on both sides, such weight as you think it is entitled to.    But, after all, opinion testimony, gentlemen of the jury, is not the testimony of persons who testify as to facts, and it is entitled, therefore, only to such weight as you, in your sound judgment and discretion, think that it is entitled to.    It is very proper in matters of this kind that require scientific knowledge—that require more knowledge, as far as technical points are concerned, than you or I, being laymen, are expected to have—it is proper to bring in persons who, by reason of long study and knowledge in the technicalities involved, are competent to express their opinions upon the subject.    In cases tried in this court we have nice questions in engineering, and nice

questions in medicine, and sometimes nice questions in law, and you are entitled, on these technical questions and subjects, to the opinion of persons learned in these sciences; and in this case you have heard the opinions of the two physicians. One physician said in his judgment these injuries were due to an accident received in a street car, and the other physician says in his judgment and opinion the results that were obtained were due, or more likely due, to the injury received from the grasping of this thistle. Now, gentlemen of the jury, study over carefully, therefore, all that testimony, and be guided by the opinion that seems to you to be the most reasonable under all the facts and circumstances as they are offered in testimony in this case."

Complaint is made of that portion of the charge stating, "One physician said in his judgment these injuries were due to an accident received in a street car." While this is not strictly accurate, we think no possible harm could have been done the defendant by the use of this language. The testimony of the witness Dr. Mulheron was that such an injury as was described might have resulted in the condition which he found, and he further testified as follows:

"*Q.* You diagnosed it as a result of an injury?

"*A.* Yes, sir.

"*Q.* What do you mean, an injury from force or a blow or striking against something?

"*A.* Well, from contact with something, a blow or otherwise.

"*Q.* A blow or falling against something?

"*Mr. Lyster:* He said a blow or otherwise.

"*Q.* Could it have come from falling or striking against a hard substance?

"*A.* Certainly."

Without quoting from his testimony at further length, it is apparent that his theory of the cause of this injury was a blow. He qualified this by saying that it was possible that he might get blood poisoning from other accidents than from a blow, where there was a condition of irritation of the skin and the blood. As against this theory, was opposed that of the witness for the defendant.

We think the jury could not have been misled by this instruction, as the testimony of Dr. Mulheron was substantially to the effect that in his judgment the injuries were due to an accident received from a blow; and, as there was no other testimony in the case of a blow or injury to the hand, except the blow received through the fault of the defendant and the injury of the thistle, no injury could have been done in so stating the case.

A further criticism is made of the instruction relating to the value of opinion testimony, and a portion of the charge is quoted. The concluding portion is omitted from that quoted in the brief of counsel. We think this omitted portion very important. It reads as follows:

"Now, gentlemen of the jury, study over carefully, therefore, all that testimony, and be guided by the opinion that seems to you to be the most reasonable under all the facts and circumstances as they are offered in testimony in this case."

We think this properly defined the duty of the jury.

Complaint is made of the argument of counsel, but, we think, without merit.

As to whether the injury to plaintiff's hand was the proximate cause of his losing his arm, we think this was clearly a question of fact, and was left to the jury under proper instructions.

The judgment is affirmed.

GRANT, OSTRANDER, HOOKER, and MOORE, JJ., concurred.