## VINNIE A. THOMAS, Respondent, v. METROPOL-ITAN STREET RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, March 4, 1907.

1. EVIDENCE: Personal Injury: Expert: Opinion: Conclusion: Trial Practice. An inquiry whether certain facts could have brought about the conditions found on the patient's person at a given time is held to call for an opinion and not a conclusion and a patient's condition at the time of a certain accident will be presumed by court and jury to be normal until the contrary is shown. Moreover, an objection to a question must be made before the answer or the fault is waived.

2. ———: ———: ———: ———: ———: Where the question to an expert calls for a conclusion but the answer merely gives the witness's opinion the vice in the question is cured.

3. ———: ———: ———: Hypothetical Question. A hypothetical question propounded to an expert should be confined to the facts proved in evidence.

4. ———: ———: ———: ———: Former Injury: Conclusion. Plaintiff testified that she had recovered from certain former injuries. The experts testified that the time since the former injury was scarcely sufficient for a complete recovery. *Held,*

this expert testimony was insufficient to overcome plaintiff's testimony, so that a hypothetical question could properly include the fact of plaintiff's normal condition at the time of the injuries on trial. But, held, further, the question and answer were improper because they called for and stated a conclusion and not an opinion, and a timely objection was made.

Appeal from Jackson Circuit Court.—*Hon. William B. Teasdale*, Judge.

REVERSED AND REMANDED.

*John H. Lucas, Charles A. Loomis* and *Ben F. White* for appellant.

(1)  It was error to permit witness Dr. Beattie to give his opinion as to the cause of the injury when the question did not embrace all the facts which should have been included, the particular objection being that it did not mention the physical condition of plaintiff at the time of the accident. Turner v. Har, 114 Mo. 345; Senn v. Railroad, 108 Mo. 143; Zin v. Railroad, 109 Mo. 142; Smith v. Railroad, 119 Mo. 246; Russ v. Railroad, 112 Mo. 45; Smart v. Kansas City, 91 Mo. App. 586; Mammersburg v. Railroad, 62 Mo. App. 563. (2)  For the same reasons it was error to permit witness Dr. C. Lester Hall to state whether or not the "fall" produced the injury complained of. (3)  There was certainly error in the ruling of the court in refusing to permit witness Dr. Schauffler to answer the hypothetical question in regard to this injury. (4)  The court erred in the admission of the testimony of plaintiff's witness, Dr. Beattie, and in the cross-examination of defendant's expert witnesses, in permitting them to state that it was their opinion that the accident complained of caused the injury sued for. This was a question solely for the jury. Taylor v. Railroad, 185 Mo. 239; Gutridge v. Railroad, 94 Mo. 472; Bottger v. Iron Co., 136 Mo. 536; Langston v. Railroad, 147 Mo. 465; Glasgow v. Railroad, 191 Mo. 358.

*E. Wright Taylor* for respondent.

(1) The objections made by defendant were not sufficiently specific to inform the court and plaintiff of the real point in the objection. R. S. 1899; sec. 864; O'Neil v. Kansas City, 178 Mo. 91; Williams v. Dittenhoefer, 188 Mo. 141; Bragg v. Railway, 192 Mo. 342. Even if the trial court did err, yet that error was harmless. State ex rel. v. Stone, 111 Mo. App. 364; Schafstette v. Railroad, 175 Mo. 142; R. S. 1899, sec. 865; Daggs v. Smith, 193 Mo. 502; Logan v. Field, 192 Mo. 70, and cases cited; Swope v. Ward, 185 Mo. 329; Caplin v. Transit Co., 114 Mo. App. 264; Gardner v. Railway, 135 Mo. 90; White v. Insurance Co., 97 Mo. App. 590; Hester v. Packing Co., 95 Mo. App. 16; Bradley v. Spickardsville, 90 Mo. App., 423; Wilkinson v. Metropolitan Ins. Co., 54 Mo. App. 665; Powers v. Kansas City, 56 Mo. App. 577; Nelson v. Railway, 88 S. W. 1119. (3) The defendant should have asked the court for an instruction covering its theory of the expert medical evidence. Ashby v. Gravel Road Co., 111 Mo. App. 84, and cases cited; Harmon v. Donahoe, 153 Mo. 274; Browning v. Railway, 124 Mo. 72; Longan v. Weltmer, 180 Mo. 335; Parman v. Kansas City, 105 Mo. App. 693.

BROADDUS, P. J.—The plaintiff's suit is to recover damages for an injury alleged to have occurred on the first day of November, 1902. She alleges in her petition that on said day she was a passenger on one of defendant's cable cars, her destination being at the intersection of Ninth and Walnut streets, Kansas City, Missouri; that when the car arrived at the point named that it stopped to let off and take on passengers; that while she was in the act of alighting the defendant's agents in charge caused the car to suddenly start forward which had the effect to violently throw her to the ground whereby she was injured. She alleges that the

injuries caused "an acute displacement of plaintiff's uterus, and plaintiff's uterus was affected with great sensitiveness and soreness, and all the pelvic and female organs of plaintiff were made sensitive and sore;" and "plaintiff's menstrual periods ceasing and becoming deranged, and plaintiff's nervous system has become prostrated, causing nervous prostration, said injuries being permanent."

The evidence tends to support her allegations as to the manner in which she was injured. The chief contention of the appellant is that the court committed error in receiving and rejecting evidence in reference to the question of her injury and its extent.

The testimony developed the fact that the plaintiff received a similar injury in November, 1899, in alighting from one of defendant's cars, for which she claimed and received damages and that injury was referred to in the examination of witnesses in the trial of this case. Dr. Beattie was called as a witness, who was familiar with plaintiff's condition, and who had been called to attend her on the third day of November, two days after her injury, and who afterwards treated her. He was asked the following question by the plaintiff; "Let me ask you, doctor, that you assume now that it will be proven to the satisfaction of the jury, that on the first day of November, 1902, Miss Thomas was thrown from a street car violently on her feet, could that have brought about the condition you found on the third of November?" Inquiry: "That shock?" The objection to the question was that, "it assumes facts to be true which have not been proven; it does not state all of the facts proved in evidence; does not state all of the facts which are necessary for the witness to know and to take into consideration in expressing an opinion on the question; because it calls for the opinion and conclusion of the witness upon an issue of fact which is

not a proper subject of opinion evidence, and which is an issue of fact for the jury to try and determine."

The objection that the question calls for a conclusion was not well taken. On the contrary, it only calls for an opinion, which is the object in invoking expert testimony. The only plausible objection to the question perhaps lies in the omission to include the physical condition of the plaintiff at the time. Although in the after progress of the case there was evidence tending to show that she had not entirely recovered from a previous injury, the evidence up to this period was to the effect that she was in good health and that she did not feel any bad effect from the previous injury. Although the question should have included the fact that she was in apparently good health at least, yet we think in the absence of any evidence that she was not the jury and the court had a right to assume that she was in a normal condition. There is another reason why the objection should not have been sustained. It was made too late. At the close of the question, witness was asked as follows: "That shock?" The plaintiff's counsel said, "Yes." Then the witness in answer to the question said, "Yes." The defendant then made its objection. It is a rule of practice that when a party, without objection, awaits to see what answer a witness will make to the question, thus giving himself the benefit of the answer if it is favorable to his interest, he will not be allowed afterwards to object on the ground that the question is incompetent, or for any other cause, the answer turning out to be unfavorable. The question was then repeated and the witness answered, "I think it might have brought about that condition."

A similar question was put to Dr. Lester Hall by plaintiff except he was asked whether her condition resulted from a shock? The question was improper, as it asked for a conclusion and not for an opinion. But the doctor answered

that, "It would be very hard to say whether it did or did not produce the condition, which was found. I know that a fall, a heavy jar, fall, throwing down, a falling on the feet, might produce displacement of the womb, but whether it would produce inflammation and adhesion is another question I cannot answer." The answer of the witness amounted strictly to an opinion and was not a conclusion in any sense. The defendant was not therefore injured by reason of the improper question put to the witness. To another question propounded in a similar manner to the same witness, he answered giving merely his opinion. This particular witness seems to have been particularly cautious to avoid in every instance, where a hypothetical question was asked him, giving his conclusion, but answered each time giving his opinion.

Dr. E. W. Schaufler was introduced as an expert by defendant and a certain question was propounded to him of great length which occupies more than a page in defendant's abstract. The question was objected to by plaintiff on the ground that it was contrary to the proof. In order to understand the merits of the controversy over the question, it had developed at this stage of the case that plaintiff's womb had been affected by her previous injury, and that Dr. Beattie had found there was a misplacement and adhesion of that organ. The object of the inquiry was to show that owing to the short length of time, as defendant insisted, after the injury such condition could not then exist; and that a much longer time was required to produce such a result. The contention of defendant was that Dr. Beattie found the condition to exist in about a week after the accident.

Dr. Beattie testified that, on the examination of plaintiff on the third of November all he found as to her condition was that she was suffering much pain and menstruation had suddenly stopped; that at a later

time he found the womb immovable; that he did not make a thorough examination owing to the extreme soreness of the parts; "that after a time her condition cleared out until the uterus was partially movable, . . . . but it still assumed its abnormal position, slightly retro-displaced and lower in the pelvis than it should be; and that after the acute condition had cleared up he could see then that she had an inflammation or congestion, which was inflammation without an infection. Later the doctor performed an operation for the purpose of detaching the womb which had adhered to the walls of the pelvic cavity.

It will be seen from what has been said of the evidence of Dr. Beattie that the statement in that question that he found an adhesion of the womb about a week after the injury was incorrect. Dr. Beattie fixes no time when he first discovered that condition. The objection of plaintiff was rightly sustained by the court.

On cross-examination of said witness, Dr. Schaufler, the plaintiff propounded the following question: "I will ask you to assume that on or about November 1, 1902, the plaintiff, as you see her, considering her size and weight, and her age—about 28, that she never has been married, and that on the morning of that day her period of menstruation had begun, and that about six o'clock in the evening while poised in the act of alighting from a car, by reason of the car being started suddenly, she was thrown violently on to her feet on the pavement, and on the 3rd day of November the medical examination disclosed a congestion within the pelvis, extreme soreness and stiffness which continued for a considerable length of time, accompanied by interrupted menstruation, until some time in January following, did such condition in your opinion result from that shock?" The defendant made specific objections to the competency of the question that it did not state her former injuries—the former falling of the womb.

Had there been any evidence to contradict the plaintiff's statement that she had recovered from such former injuries, the question should have included that matter also. It is true, that in the opinion of medical experts it was improbable that she had entirely recovered, but that there must exist some latent effect of such former injury. Such expert evidence did not go to establish the fact that she had not entirely recovered, for the well known reason that expert testimony is not admitted for the purpose of proving a fact. Such evidence is based upon admitted facts. The question, however, was improper as it called for a conclusion of the witness and not as to his opinion. His answer was that, "We might suppose that it resulted from the shock." Both the question and answer were incompetent. [Taylor v. Railroad, 185 Mo. 239; Glasgow v. Railroad, 191 Mo. 347.] But it is insisted that as there was no general objection to the competency of the question and no specific objection that it called for the conclusion of the witness and not for his opinion, the defendant waived the error. But plaintiff was not content with the answer but renewed her question in a different form, to which defendant interposed the same objection and the general objection that the question called for the conclusion and not the opinion of the witness. After stating the hypothetical facts, the question closed thus: "Did that condition result in your opinion from that shock?" The answer was: "The supposition is that there was a displacement three years before, treated a long time, apparently cured and uterus in its normal position, and then following this alighting from the car it was again found or found to be fallen and gorged and incapable of being returned without excessive pain. I should suppose that the falling of the womb the last time was due, supposing it was put in place before properly, that it was due to the accident or to the—yes, to the accident—a violent descent from the car." This was error.

As the cause will have to be retried on account of the error mentioned, it is not necessary to say anything upon the question as to whether the verdict was excessive.

Reversed and remanded.   All concur.